NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-1373 and 13-1959
_____

In Re: SYNTAX-BRILLIAN CORPORATION, et al.,
Debtors

SB LIQUIDATION TRUST,
Appellant
v.

PREFERRED BANK
_____

On Appeal from the United States Bankruptcy Court
for the District of Delaware
(No. 10-51389)
U.S. Bankruptcy Judge: Brendan L. Shannon
_____

Argued December 16, 2013

Before:   JORDAN, VANASKIE and VAN ANTWERPEN, *Circuit Judges*

(Opinion Filed:  August 11, 2014)

Allan B. Diamond
Eric D. Madden
Michael J. Yoder [ARGUED]
Diamond McCarthy LLP
909 Fannin Street, Suite 1500
Houston, TX 77010

David M. Fournier
John H. Schanne, II
Pepper Hamilton LLP
1313 Market Street
Wilmington, DE 19899

*Counsel for Appellant*

Stuart M. Brown
R. Craig Martin [ARGUED]
919 N. Market Street, Suite 1500
Wilmington, DE 19801
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge.*

These consolidated appeals arise out of the underlying Chapter 11 bankruptcy proceedings of debtor Syntax-Brillian Corporation ("SBC" or "Debtor"). Appellant SB Liquidation Trust ("the Trust") was established pursuant to SBC's liquidation plan. Under the terms of that plan, the Trust assumed control over all SBC assets, and all causes of action were vested in the Trust on behalf of the bankruptcy estate. The Trust initiated this adversary proceeding against Appellee Preferred Bank, seeking to avoid and recover allegedly fraudulent transfers under the fraudulent transfer provisions of the Bankruptcy Code, 11 U.S.C. § 548(a), and the Delaware Uniform Commercial Code, 6 Del. Code §§ 1304 and 1305. The Trust also raises common law claims of aiding and abetting a breach of fiduciary duty and fraud purportedly committed by SBC insiders.

The Bankruptcy Court dismissed all claims at the pleadings stage. As to the fraudulent transfer claims, the Bankruptcy Court concluded that the Trust was required to show that Preferred Bank had knowledge of the purported scheme to defraud SBC's creditors, and that the complaint failed to allege facts from which such knowledge could

2

be inferred. The Bankruptcy Court further held that Preferred Bank could not be held liable for aiding and abetting an alleged breach of fiduciary duty and fraud under governing law. We must decide whether the Bankruptcy Court erred in its assessment of the sufficiency of the Trust's complaint.

For the reasons that follow, we will vacate the Bankruptcy Court's dismissal of the Trust's claims under 11 U.S.C. § 548(a)(1)(A) and 6 Del. Code § 1304(a)(1) because it is SBC's intent, and not Preferred Bank's knowledge of SBC's intent, that determines whether a fraudulent transfer claim may be maintained under these statutory provisions. Preferred Bank's knowledge vel non of the purported fraud is relevant only with respect to an affirmative defense of good faith available to Preferred Bank under the pertinent statutes. Both § 548(a)(1)(A) and 6 Del. Code § 1304(a)(1) permit avoidance of a transfer so long as the debtor possessed the requisite intent to defraud, and it was therefore error for the Bankruptcy Court to require the Trust's pleadings to aver that Preferred Bank possessed knowledge of SBC's alleged fraud. As to the dismissal of the Trust's other claims, we will affirm the Bankruptcy Court's judgment.

## I.

SBC was formed in 2005, when Syntax Groups Corporation ("Syntax") became a wholly owned subsidiary of Brillian Corporation ("Brillian"). The Trust alleges that, in the years preceding and following this merger, several Syntax officers and directors engaged in a series of fraudulent activities that ultimately led to SBC's insolvency. The Trust further alleges that this fraud was made possible through substantial assistance provided by Preferred Bank.

3

Syntax was a California corporation that distributed electronic products –

primarily high-definition televisions ("HD TVs") manufactured in Asia – to consumers in

the United States.[1] Several Syntax officers and directors were also officers, directors,

and/or shareholders of Taiwan Kolin Company, Ltd. ("Kolin"). Like the parties, we

refer to these individuals collectively as the "Kolin Faction."

In early 2004, Syntax entered into a manufacturing agreement with Kolin, which

provided that Syntax would import HD TVs manufactured by Kolin. The Trust avers that

the manufacturing agreement was intended "to enhance Kolin's ability to finance its

operations . . . by artificially inflating its reported sales revenues and U.S. receivables,"

thereby improving Kolin's credit-worthiness and expanding its access to U.S. markets.

(App. 62 ¶ 2.) Allegedly at the behest of the Kolin Faction, Syntax simultaneously

entered into incentive agreements with Kolin, which allowed Kolin "to systematically

over-charge Syntax," while periodically providing Syntax with "'price protection' rebates

to lessen the impact on Syntax's financial statements." (*Id.*)

Syntax and Preferred Bank commenced a business relationship in November 2004,

when they entered into a $3.75 million loan agreement, which was guaranteed by

members of the Kolin Faction. The two companies also entered into a credit agreement.

Under the terms of the credit agreement, Preferred Bank provided letters of credit and

---

[1] For purposes of this appeal, our recitation of the factual background assumes, without deciding, the truthfulness of the Trust's well-pleaded allegations, construing the complaint in the light most favorable to the Trust and drawing all reasonable inferences in the Trust's favor. *Rea v. Federated Investors*, 627 F.3d 937, 940 (3d. Cir. 2010).

"trust receipt" loans to Syntax, which Syntax used to acquire inventory from Kolin.[2] The Trust contends that, over time, as Kolin continued to overcharge Syntax, the proceeds of Syntax's sales were insufficient to repay the debt owed to the Bank. Syntax's debt to Preferred Bank grew, and, as a result, the loan agreement between Syntax and Preferred Bank was amended to increase the principal loan and credit maximums several times.

Syntax and Brillian merged in November of 2005. Pursuant to this merger, Syntax became a wholly owned subsidiary of Brillian, and Brillian changed its name to SBC. The Trust maintains that the Kolin Faction devised this merger in order to raise additional funds for Kolin by expanding Syntax's access to U.S. markets.

The focus of the Trust's claims on this appeal are obligations to Preferred Bank incurred by Syntax or SBC, and concomitant payments made by Syntax or SBC to Preferred Bank, pursuant to three separate credit instruments. One of the credit instruments is referred to by the Trust as the "Kolin Cash Secured Line," which is alleged to have been used by SBC to borrow money from Preferred Bank and funnel the money to Kolin through "Loan 204159 and/or Line 192882341[,] . . . which [were] secured by a series of bank accounts that Kolin maintained at Preferred Bank." (App. 121 ¶ 171.) The Trust alleges that transactions of this nature occurred "[b]eginning at the end of the December quarter in 2005 and continuing virtually every quarter-end through the quarter

---

[2] In typical "trust receipt" financing, a bank advances funds to a customer, usually an importer/seller, for the purchase of goods. The goods are entrusted to the customer, who may sell them. The proceeds of such sales are used to repay the trust receipt to the bank, and any excess can be kept by the customer as profit. *See* G.J.C., Annotation, *Trust Receipt, or Instrument Purporting To Be Such, as a Chattel Mortgage within Filing Statutes*, 25 A.L.R. 332 (1923).

ending December 31, 2007." (*Id.*) The obligations incurred by Syntax and SBC pursuant to the Kolin Cash Secured Line totaled $38,800,000, and interest and principal repayments on that line of credit amounted to $29,106,962.42.

The second credit instrument is referred to by the Trust as "Note 204615." The Trust alleges that Syntax and SBC funneled $4 million to Kolin "as part of the Kolin Faction's scheme." (App. 120 ¶ 169.) The Trust seeks to set aside the Note 204615 obligations totaling $4 million plus the interest payments of $274,444.40 made by SBC on Note 204615.

The third credit instrument is referred to by the Trust as "Line 202359." The Trust alleges that SBC used this line of credit to transfer to Kolin $31 million on December 31, 2006. The Trust alleges that SBC purported to justify this transfer to Kolin as payment on fraudulent invoices issued by Kolin to SBC for phony "tooling" expenses and fictitious sales of television sets.

The Trust alleges that SBC again used Line 202359 in September of 2007 to transfer to Kolin an additional $15 million. These transfers were also purportedly justified by fraudulent payables by SBC to Kolin. The Trust asserts that both the obligations under Line 202359 as well as interest payments on the line totaling over $3.5 million should be set aside.

The gist of the Trust's claims is that SBC entered into financing with Preferred Bank to siphon money to Kolin. According to the Trust, the borrowings from Preferred Bank were justified by the creation of false accounts payable from SBC to Kolin. In relation to Preferred Bank, the Trust alleges that the bank had knowledge that Kolin

6

priced its product above the likely resale price, making it impossible for SBC to remain in business.

II.

On July 8, 2008, SBC filed for relief under Chapter 11 of the Bankruptcy Code. On July 7, 2010, the Trust filed this adversary suit against Preferred Bank, contending that, by providing financing to Syntax and SBC, the Bank enabled the Kolin Faction's fraud and delayed SBC's ultimate demise, thus allowing the Kolin Faction to divert millions of dollars away from SBC's creditors. In its original complaint, the Trust raised four causes of action. In Count I, the Trust asserted that Preferred Bank knowingly aided and abetted the Kolin Faction in breaching their fiduciary duties. Count II asserted that Preferred Bank aided and abetted the Kolin Faction in committing fraud. In Counts III and V, the Trust sought to avoid certain obligations and transfers to Preferred Bank incurred with actual intent to defraud under 11 U.S.C. § 548(a)(1)(A) and § 544(b), and under 6 Del. Code § 1304(a)(1). In Counts IV and VI, the Trust sought to avoid constructively fraudulent transfers under 11 U.S.C. § 548(a)(1)(B),[3] § 544(b), and under

---

[3] 11 U.S.C. § 548(a)(1)(B) provides, in pertinent part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> . . . .

7

6 Del. Code §§ 1304(a)(2)[4] and 1305.[5] Count VII sought recovery of the fraudulent

transfers under 11 U.S.C. § 550.[6]

---

(B)(i) received less than a reasonably equivalent value
in exchange for such transfer or obligation . . . .

[4] Del. Code tit. 6 § 1304(a)(2) provides, in pertinent part:

(a) A transfer made or obligation incurred by a debtor is
fraudulent as to a creditor, whether the creditor's claim arose
before or after the transfer was made or the obligation was
incurred, if the debtor made the transfer or incurred the
obligation:

. . . .

(2) Without receiving a reasonably equivalent value in
exchange for the transfer or obligation . . . .

[5] Del. Code tit. 6 § 1305 provides, in pertinent part:

(a) A transfer made or obligation incurred by a debtor is
fraudulent as to a creditor whose claim arose before the
transfer was made or the obligation was incurred if the debtor
made the transfer or incurred the obligation without receiving
a reasonably equivalent value in exchange for the transfer or
obligation and the debtor was insolvent at that time or the
debtor became insolvent as a result of the transfer or
obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor
whose claim arose before the transfer was made if the transfer
was made if the transfer was made to an insider for an
antecedent debt, the debtor was insolvent at that time and the
insider had reasonable cause to believe that the debtor was
insolvent.

[6] 11 U.S.C. § 550 provides, in pertinent part:

(a) Except as otherwise provided in this section, to the extent that a transfer
is avoided under section 544, . . . 548, . . . or 724(a) of this title, the
trustee may recover, for the benefit of the estate, the property
transferred, or, if the court so orders, the value of such property, from –

Preferred Bank moved to dismiss and, on July 25, 2011, the Bankruptcy Court issued an opinion granting the motion (the "Dismissal Opinion"). *See In re Syntax-Brillian Corp.*, No. 10-51389, 2011 WL 3101809, at *1 (Bankr. D. Del. July 25, 2011). After filing a timely notice of appeal with the District Court, the Trust requested certification of a direct appeal to our court pursuant to 28 U.S.C. § 158(d), which was granted by the District Court on September 10, 2012. The Trust then petitioned to appeal directly to our Court. We granted that petition on January 24, 2012.

While this appeal was pending, the Trust filed in the Bankruptcy Court a motion for relief from the July 25, 2011 Bankruptcy Court dismissal order pursuant to Federal Rule of Civil Procedure 60(b), contending that newly discovered evidence impacted the Trust's understanding of the fraudulent schemes. The Trust also moved for leave to file an amended complaint.

The newly discovered evidence arose from a complaint filed by the United States Securities and Exchange Commission ("SEC") against five directors and/or officers of

---

(1) the initial transferee of such transfer or the entity for whose benefits such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from –

(1) a transferee that takes for value, . . . in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

The § 550 claim thus depends on the viability of a successful fraudulent transfer claim under § 548.

9

SBC. The Trust alleged that the SEC filing altered the Trust's understanding of the fraudulent scheme as alleged in the original complaint. Specifically, based on the SEC complaint, the Trust asserted that SBC recorded more than $400 million of fake sales of Kolin-manufactured HD TVs. The Bankruptcy Court, while finding that the Trust exercised reasonable diligence in uncovering the newly discovered evidence, denied the Trust's motions because it concluded that the evidence "fail[ed] to implicate the bank in any new way" (the "Rule 60 Opinion"). (App. 47.)

The Trust timely appealed to the District Court, and the parties jointly requested certification for direct appeal, which was granted. The Trust then filed a petition for permission to directly appeal before us, which we granted on April 4, 2013. We subsequently consolidated the appeals for all purposes on April 30, 2013.

III.

The Bankruptcy Court had jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b). We have jurisdiction under 28 U.S.C. § 158(d)(2). Our review of a dismissal pursuant to Rule 12(b)(6) is plenary. *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013). Our review of the District Court's ruling on a Rule 60(b) motion is for abuse of discretion. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008).

A. Fraudulent Transfer Claims

1.

We turn first to the Bankruptcy Court's dismissal of the Trust's fraudulent transfer claims contained in Counts III through VI of the Complaint, in which the Trust seeks to

10

avoid the transactions it refers to as "the Purported Obligations."[7]  The Court analyzed

these claims, actual and constructive alike, in light of the "collapsing" doctrine, an

equitable tool by which a court may "collapse" multiple apparently innocuous

transactions for purposes of a fraudulent transfer analysis and consider the economic

reality of the integrated whole.[8]  *See In re Syntax-Brillian Corp.*, 2011 WL 3101809, at

*11–12 (citing *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1302 (3d Cir.

1986)).  Some courts applying that doctrine have required proof of knowledge of the

fraudulent scheme not only on the part of the debtor, but also on the part of the transferee

defendant.  *See*, *e.g.*, *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635–36 (2d Cir. 1995)

("[T]he courts have looked frequently to the knowledge of the defendants of the structure

of the entire transaction and to whether its components were part of a single scheme.")

(quoting *In re Best Products Co.*, 168 B.R. 35, 57 (Bankr. S.D.N.Y. 1994)).  Adopting

that position, the Bankruptcy Court found that the transfers could not be collapsed due to

the Trust's failure to sufficiently allege Preferred Bank's knowledge of the Kolin

Faction's scheme, and that, without collapsing, the claims failed.[9]

---

[7]  The Trust uses the phrase "Purported Obligations" to refer to the obligations it seeks to avoid, which consist of the obligations incurred under Line 202359 in December of 2006 and September of 2007; $4 million in obligations incurred under Note 204615; and the Kolin Cash Secured Line obligations.  (Trust Br. 2 n.2.)

[8]  Other courts have referred to this general principle as the "integration doctrine," the "integrated transaction" doctrine, or the "step transaction" doctrine.  *See*, *e.g.*, *In re Foxmeyer Corp.*, 286 B.R. 546, 573-74 (Bankr. D. Del. 2002).

[9]  The Court further observed that the claims of constructive fraud in Counts IV and VI failed because SBC received loan proceeds of "reasonably equivalent value" in connection with the transactions, and they therefore failed to meet the requirements of 11

11

Here, the Trust argues that, with respect to its claims of actual fraud under 11 U.S.C. § 548(a)(1)(A) and 6 Del. Code § 1304, the relevant transactions can be avoided without application of the "collapsing" doctrine.  Instead, according to the Trust, such claims require evidence of only the debtor's intent, which the Trust believes it has adequately alleged.  The intent of the transferee, under that view, becomes relevant in this case only as an affirmative defense—not as a prima facie element of the Trust's case.  Alternatively, the Trust contends that the Bankruptcy Court erred in concluding that the multiple transactions could only be collapsed if Preferred Bank knew or should have known of their fraudulent nature, and in concluding that the Trust failed to sufficiently allege that Preferred Bank possessed this knowledge.  Because we find that the Trust prevails on its first argument, we need not reach its alternative argument regarding the requirements for the equitable tool of collapsing.

2.

The Bankruptcy Code's fraudulent transfer section, in pertinent part, provides:

> (a)(1) The trustee may avoid any transfer . . . of an interest of
> the debtor in property, or any obligation . . . incurred by the

---

U.S.C. § 548(a)(1)(B) and Del. Code. tit. 6 § 1304(a)(2). *In re Syntax-Brillian Corp.*, 2011 WL 3101809, at \*12 n.14.  In its briefing before this Court, the Trust challenges only the Bankruptcy Court's findings as to its claims of actual fraud.  It makes no particularized argument regarding the Bankruptcy Court's denial of Counts IV and VI, and fails to mention those claims in its Statement of Issues on appeal.  We therefore consider any challenge to the dismissal of those claims waived under Federal Rule of Appellate Procedure 28(a).  *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).  Accordingly, we will affirm the Bankruptcy Court's dismissal of Counts IV and VI.  Because we affirm dismissal of the Trustee's constructive fraud claims on purely procedural grounds, we express no view as to whether the "collapsing" doctrine, when applied in the context of a constructive fraud claim, as it was in *Tabor Court*, requires proof of the transferee defendant's intent.

12

> debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, *if the debtor* voluntarily or involuntarily—
>
> > (A) made such transfer or incurred such obligation *with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted . . . .*

11 U.S.C. § 548(a)(1)(A) (emphasis added). Similarly, 6 Del. Code § 1304(a)(1) provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) With actual intent to hinder, delay or defraud any creditor of the debtor . . . .

The statutory texts are clear and unambiguous: obligations are avoidable if the *debtor* incurred the obligations "with actual intent to hinder, delay or defraud" the debtor's creditors. § 548(a)(1)(A). Neither the Bankruptcy Code nor Delaware law refers to the intent of the obligee defendant as a factor in determining whether a specific obligation is fraudulent and therefore avoidable. Without any such reference, we conclude that the Trust should not have been required to aver knowledge of the Debtor's fraudulent intent on the part of the defendant/transferee, Preferred Bank.

Other courts interpreting similar provisions have reached the same conclusion. For example, in *SEC v. Resource Development International, LLC*, 487 F.3d 295, 301 (5th Cir. 2007), the United States Court of Appeals for the Fifth Circuit interpreted Texas's version of the Uniform Fraudulent Transfer Act, codified at § 24.005(a)(1) of the Texas Business & Commerce Code, which contains language that is virtually identical to

13

the Delaware statute at issue here.[10] The Fifth Circuit observed that "'the transferees' knowing participation is irrelevant under the statute' for purposes of establishing the premise of (as opposed to liability for) a fraudulent transfer." *Id.* (quoting *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006)); *see also In re Cohen*, 199 B.R. 709, 716-17 (B.A.P. 9th Cir. 1996) ("The focus in the inquiry into actual intent is on the state of mind of the debtor. . . . Culpability on the part of the [transferees] is not essential."); *In re Nat'l Audit Def. Network*, 367 B.R. 207, 222 (Bankr. D. Nev. 2007) ("[I]t is irrelevant to a transferee's initial liability under § 548(a)(1) . . . that he or she was clueless as to the debtor's intent."); *In re Manhattan Inv. Fund Ltd.*, 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002) ("The operative requirement for a transfer to be avoided under [§ 548(a)(1)(A)] is the *debtor's* actual fraudulent intent.").

We are satisfied that this interpretation of the statute will not necessarily lead to liability for defendants who participated unwittingly in a debtor's fraudulent scheme. Both the Bankruptcy Code and the Delaware Code provide good faith exceptions. *See* 11 U.S.C. § 548(c) (providing exception for transferees "that take for value and in good faith"); 6 Del. Code § 1308(a) (establishing defense for party "who took in good faith and for a reasonably equivalent value"). Thus, a defendant has the opportunity to assert its good faith as a defense to a fraudulent transfer action to avoid liability. It is not essential

---

[10] Texas Business & Commerce Code § 24.005(a)(1) provides, in pertinent part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made a transfer or incurred the obligation . . . with actual intent . . . .

14

that the Trust aver that the Bank had culpable knowledge of any underlying scheme to defraud or acted in bad faith. Reading a bad faith element into § 548(a)(1) or 6 Del. Code § 1304 would only serve to shift the burden on the good faith defense, requiring the representative of the bankruptcy estate to prove that the transferee did not act in good faith, in derogation of the statutory language.

Where "[a] statute's plain language is unambiguous and expresses [the legislature's] intent with sufficient precision, we need not look further." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011). Here, section 548(a)(1)(A) and 6 Del. Code § 1304 unambiguously focus solely on the intent of the debtor. We will therefore vacate the Bankruptcy Court's dismissal of the actual fraud claims presented by the Trust.[11]

### B. The Aiding & Abetting Claims

We turn now to the Trust's aiding and abetting claims. The first claim alleges that Preferred Bank aided and abetted a breach of fiduciary duty. The parties disagree about whether this claim is controlled by the law of Delaware – the state in which SBC is incorporated – or the law of California – the state in which Preferred Bank is located, and in which the majority of the relevant transactions took place.

"The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts." *Klaxon Co. v. Stentor Elec. Mfg.*

---

[11] We leave for the Bankruptcy Court to determine whether, in light of our holding that a transferee's intent is not relevant, the Trust sufficiently alleged actual fraud under the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.

*Co.*, 313 U.S. 487, 496 (1941).  When faced with a conflict of law question, our first step is to determine whether "there is an *actual* or real conflict between the potentially applicable laws."  *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007).  If the laws of each jurisdiction are the same, or if they would lead to the same result, "then there is no *conflict* at all, and conflict of law analysis is unnecessary."  *Id.*; *see also Deuley v. DynCorp. Int'l Inc.*, 8 A.3d 1156, 1161 (Del. 2010) (where "there is a 'false conflict,' . . . the Court should avoid the choice-of-law analysis altogether.").

To establish a valid claim for aiding and abetting a breach of fiduciary duty under Delaware law, a plaintiff must prove "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach."  *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).  A defendant knowingly participates in a breach of fiduciary duty if it "act[s] with the knowledge that the conduct advocated or asserted constituted such a breach."  *Id.* at 1097.  To establish an aiding and abetting claim under California law, a plaintiff must demonstrate that a defendant "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act . . . ."  *Casey v. U.S. Bank Nat'l Ass'n*,  26 Cal. Rptr. 3d 401, 405 (Cal. Ct. App. 2005).

Here, neither party argues that Delaware's "knowing participation" and California's knowing provision of "substantial assistance or encouragement" differ in a significant way; rather, both parties suggest, albeit without expressly arguing, that the outcome would be the same under either state's laws.  (*Compare* PB Br. 16 ("While not

16

citing Delaware cases, Plaintiff discusses California cases with similar principles."), *with* Trust Reply Br. 5 ("Regardless of whether California or Delaware law applies, all that is required to state a claim for aiding and abetting breach of fiduciary duty is that [Preferred Bank] had 'actual knowledge' of and gave 'substantial assistance' to an actionable breach of fiduciary duty.").) We agree, and conclude that, because the laws are sufficiently similar and that they result in the same outcome here, a choice of law analysis is unnecessary.

Under either state's laws, the Trust was required to plead facts from which it may be inferred that Preferred Bank knew of the Kolin Faction's alleged fraud and breach of fiduciary duty. We agree with the Bankruptcy Court that the Trust failed to do so. Although the Trust baldly asserted that Preferred Bank knew that it was enabling the Kolin Faction's actionable conduct, the Trust's allegations consist of wholly conclusory allegations that the Bank "knew that the insiders' purpose in causing SBC to incur the Purported Obligations and enter into the four-party arrangement was to benefit Kolin." (Trust Br. 55.) The Trust argues that Preferred Bank must have known of this purpose in light of "the nearly simultaneous nature of the transactions and course of dealings." (*Id.*) Further, the Trust points to what it characterizes as Preferred Bank's "highly irregular" relationship with members of the Kolin Faction whereby the Bank agreed to frequent loan amendments, utilized "sloppy documentation involving backdating," and made "numerous advances of funds . . . without obtaining customary authorization." *In re Syntax Brillian Corp.*, 2011 WL 3101809, at *8.

17

These allegations do not suffice to support an inference that the Bank knew or should have known of the Kolin Faction's alleged scheme to siphon the funds to Kolin to the detriment of SBC. As Preferred Bank points out, "Kolin was the seemingly legitimate supplier of millions of units of product to Debtor." (PB Br. 46.) Furthermore, many of the transactions at issue here were disclosed publicly in SEC filings and presumably examined by both internal and external auditors, and none of these examinations resulted in the discovery of fraud.

In sum, the Trust attempts to substantiate its assertion of knowledge by insinuating that Preferred Bank must have known of the fraud in the context of the purportedly suspicious circumstances. We are not persuaded. The existence of such circumstances, coupled with bald assertions of knowledge, was insufficient to survive Preferred Bank's motion to dismiss.

Turning to the second aiding and abetting claim regarding fraud, the parties agree that California law applies, and thus, again, we need not engage in a choice of law analysis. The California Financial Code insulates banks from suits based on presumed knowledge. Specifically, Preferred Bank has argued, and the Bankruptcy Court found, that California Financial Code §§ 952 and 953, now codified at §§ 1450 and 1451, shield Preferred Bank from liability on this claim. Section 1450 provides:

> Notice to any bank of an adverse claim . . . to a deposit standing on its books to the credit of . . . any person shall be disregarded, and the bank, notwithstanding the notice, shall honor the checks, notes, or other instruments requiring payment of money by or for the account of the person to whose credit the account stands . . . without any liability on the part of the bank . . . .

18

Cal. Fin. Code § 1450.

Section 1451 of the California Financial Code provides:

> When the depositor of a commercial or savings account has authorized any person to make withdrawals from the account, the bank, in the absence of written notice otherwise, may assume that any check, receipt, or order of withdrawal drawn by such person in the authorized form or manner, including checks drawn to his personal order and withdrawal orders payable to him personally, was drawn for a purpose authorized by the depositor and within the scope of the authority conferred upon such person.

Cal. Fin. Code § 1451.

Taken together, these provisions demonstrate that, in general, a bank is not liable for the wrongdoing of its depositors. Nor is it charged with a duty to investigate or police its depositor's accounts. *See Chazen v. Centennial Bank*, 71 Cal. Rptr. 2d 462, 466 (Cal. Ct. App. 1998). Furthermore, California courts have concluded that banks may presume that depositors have authorized transactions undertaken by corporate officers, and that "[r]egardless of whatever suspicion might have lurked in the mind of the teller as to the destination of the proceeds, no duty of inquiry [is] cast on the bank." *Boston Ins. Co. v. Wells Fargo Bank*, 181 P.2d 84, 88 (Cal. Ct. App. 1947).

The California Financial Code allows banks to assume the propriety of the withdrawals made by authorized officers. *See id.* Preferred Bank was therefore not required to deduce or investigate fraud based upon suspicious circumstances. Consequently, we will affirm the Bankruptcy Court's dismissal of the aiding and abetting fraud claims.

C. The Rule 60(b) Motion

The Trust also appeals the Bankruptcy Court's denial of its motion for relief from the July 25, 2011 Bankruptcy Court dismissal order pursuant to Federal Rule of Civil Procedure 60(b), and its associated motion for leave to file an amended complaint. The Trust cites newly discovered evidence which it believes supports both its fraud claims and its common law aiding-and-abetting claims. The Bankruptcy Court denied the Trust's motions because it concluded that the evidence "fail[ed] to implicate [Preferred Bank] in any new way." (App. 47.)

For the reasons stated above in Section III.B, we conclude that the Bankruptcy Court did not abuse its discretion in finding that this evidence failed to affect its determination regarding Preferred Bank's knowledge with respect to the aiding-and-abetting claims in Counts I and II. On remand, however, the Bankruptcy Court is free to reconsider whether to grant the Trust leave to file an amended complaint to include the newly discovered evidence set forth in its Rule 60(b) motion insofar as it concerns the claims of actual fraud with respect to the "Purported Obligations."

IV.

For the foregoing reasons, we will affirm in the dismissal of all but Counts III, V, and VII of the Complaint. As to those claims, we will vacate the Bankruptcy Court's dismissal order and remand for further proceedings consistent with this opinion.