[No. A075356. First Dist., Div. One. Jan. 12, 1998.]

LAWRENCE J. CHAZEN et al., Plaintiffs and Appellants, v. CENTENNIAL BANK, Defendant and Respondent.

[No. A075424. First Dist., Div. One. Jan. 12, 1998.]

SHELDON BROWN et al., Plaintiffs and Appellants, v. CENTENNIAL BANK et al., Defendants and Respondents.

534

**COUNSEL**

Poindexter & Doutré and Bennett M. Sigmond for Plaintiffs and Appellants in No. A075356.

O'Donnell & Pia, Jonathan S. O'Donnell, Mandel, Buder & Verges and Ralph T. Kokka for Plaintiffs and Appellants in No. A075424.

Coblentz, Cahen, McCabe & Breyer, Jonathan R. Bass and Susan K. Jamison for Defendants and Respondents.

Christopher E. Chenoweth as Amicus Curiae on behalf of Defendants and Respondents

**OPINION**

**SWAGER, J.**—In these two consolidated appeals, we review actions against the same defendants, Centennial Bank (hereafter bank) and California Banc-shares, involving closely parallel facts, which were also consolidated in the trial court. The separate plaintiffs, Lawrence J. Chazen (hereafter Chazen) and Dr. Sheldon Brown (hereafter Brown), both appeal from judgments of dismissal entered upon orders sustaining without leave to amend demurrers to their first amended complaints. We reverse the judgment dismissing

Brown's fifth cause of action for conversion and otherwise affirm both judgments of dismissal.

### FACTUAL AND PROCEDURAL BACKGROUND

Both complaints seek to hold the bank liable for the defalcations of a mortgage loan broker, Robert Cox, and two companies which he controlled, First Capital Finance and Consumer Financial Services (hereafter referred to collectively as Cox). From 1988 through 1994, plaintiffs purchased second mortgages through Cox who agreed to service the loans by collecting payments due and remitting them to plaintiffs. For this purpose, he opened three accounts with the bank which were designated on the bank's signature card as "payment trust account," "custodial account," and "escrow account." Cox deposited note payments into the accounts and then withdrew substantial sums for his own use, including much of the principal payments on a series of notes that were paid in full. Chazen alleges that Cox converted more than $542,000 in note payments belonging to him; Brown alleges that Cox converted, or permitted the conversion of, funds in excess of $681,401.

Chazen and Brown filed original complaints in the Alameda County Superior Court within a week of each other. When the bank filed demurrers against each complaint, the plaintiffs each chose to file a first amended complaint. The bank again demurred to the amended complaints. The matter came up for a hearing on March 28, 1996, and the trial court sustained the demurrers to each first amended complaint without leave to amend.

Contending that the court erred in failing to allow them leave to amend, Chazen and Brown filed similar motions for reconsideration to which they each appended a proposed second amended complaint. Following a hearing on May 29, 1996, the trial court denied both motions for reconsideration.

### DISCUSSION

Abandoning other legal theories, appellants challenge the judgment only to the extent it dismissed their causes of action for conversion and negligence. We will analyze each theory under the facts common to both complaints and then consider the propriety of the orders sustaining the bank's demurrer to each first amended complaint and denying each appellant leave to file a second amended complaint.

### A. Conversion

In the causes of action for conversion, appellants seek to have the bank share liability for Cox's conversion of the note payments deposited in

the three designated trust accounts in the bank. We begin our analysis with the well-established principle, codified in Financial Code sections 952 and 953, that a bank has no duty to monitor trust accounts for breaches of fiduciary duty. The early decision in *United States etc. Co. v. First Nat. Bk.* (1912) 18 Cal.App. 437 [123 P. 352] provides a classic illustration of the principle. The guardian of a minor received a check made out to him as guardian, deposited it in his individual bank account, and then dissipated the funds. The minor's trustee sued the depository bank to recover the loss. Affirming an order sustaining a demurrer to the complaint, the court observed, "Appellant's contention, if accepted as applicable to the facts presented, would render banks *ex-officio* trustees in general for all *cestuis que trust* [beneficiaries]. In our opinion, the law does not impose such duties upon banks or other depositaries of trust funds." (*Id.* at p. 441.)

This well-established principle recognized in *United States etc. Co. v. First Nat. Bk., supra,* 18 Cal.App. 437, can be implied from the nature of the relationship between a bank and a depositor. ▮ "It has long been regarded as 'axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor.' [Citation.] 'A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such.' [Citation.]" (*Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476 [261 Cal.Rptr. 735].) Accordingly, banks "are not fiduciaries for their depositors." (*Copesky v. Superior Court* (1991) 229 Cal.App.3d 678, 694 [280 Cal.Rptr. 338].)

"The relationship of bank and depositor is founded on contract," (*Barclay Kitchen, Inc. v. California Bank* (1962) 208 Cal.App.2d 347, 353 [25 Cal.Rptr. 383]) which is ordinarily memorialized by a signature card that the depositor signs upon opening the account. (2 Cal. Commercial Law (Cont.Ed.Bar June 1992 update) §§ 8.1 to 8.3, p. 143.) This contractual relationship does not involve any implied duty "to supervise account activity" (*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 481 [56 Cal.Rptr.2d 756]) or "to inquire into the purpose for which the funds are being used" (*Keeney v. Bank of Italy* (1917) 33 Cal.App. 515, 518 [165 P. 735]) and entails no contractual obligation to persons other than the account holder (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1628 [272 Cal.Rptr. 623]). It follows that "[c]ommercial banks have no duty to police their fiduciary accounts" (*La Vista Cemetery Assn. v. American Sav. & Loan Assn.* (1970) 12 Cal.App.3d 365, 369 [90 Cal.Rptr. 722]; *LaMonte v. Sanwa Bank California* (1996) 45 Cal.App.4th 509, 522 [52 Cal.Rptr.2d 861]) and are "not liable for the misappropriation of trust funds by the trustee" (*Blackmon v. Hale* (1970) 1 Cal.3d 548, 556 [83 Cal.Rptr. 194, 463 P.2d 418]).

In *Chicago Title Ins. Co.* v. *Superior Court* (1985) 174 Cal.App.3d 1142 [220 Cal.Rptr. 507], the court noted that considerations of confidentiality also militate against imposing on banks a duty to monitor accounts for wrongdoing. There, an escrow company, which suffered losses in an alleged check kiting scheme, sued the depository bank on the theory that it should have disclosed a customer's unusual banking activity. Affirming a summary judgment for the bank, the court stated, " 'A bank customer's reasonable expectation is that, absent compulsion by legal process, the matters he reveals to the bank will be utilized by the bank only for internal banking purposes. . . .' [Citation.] If, as [plaintiff] suggests, banks had a duty to reveal suspicions about their customers, they would violate their customers' right to privacy . . . . We refuse to recognize such a duty by banks to inform on suspicious customers, and we thereby avoid the loss of privacy, expense and commercial havoc that would result from such a holding." (*Id.* at p. 1159; see also *Software Design & Application, Ltd.* v. *Hoefer & Arnett, Inc., supra,* 49 Cal.App.4th at p. 483.)

The principle that the bank has no duty to police their fiduciary accounts finds expression in two statutes with direct relevance to this case. Financial Code section 953 provides: "When the depositor of a commercial or savings account has authorized any person to make withdrawals from the account, the bank, in the absence of written notice otherwise, may assume that any check, receipt, or order of withdrawal drawn by such person in the authorized form or manner, including checks drawn to his personal order and withdrawal orders payable to him personally, was drawn for a purpose authorized by the depositor and within the scope of the authority conferred upon such person." As noted in *Boston Ins. Co.* v. *Wells Fargo Bank* (1947) 80 Cal.App.2d 59, 66 [181 P.2d 84], the statute allows a bank to presume that the depositor authorized checks which are drawn by a corporate officer authorized to make withdrawals from the account, even when the officer draws the funds to his personal order: "Regardless of whatever suspicion might have lurked in the mind of the teller as to the destination of the proceeds, no duty of inquiry would have been cast on the bank." (See also *Desert Bermuda Properties* v. *Union Bank* (1968) 265 Cal.App.2d 146, 150 [71 Cal.Rptr. 93].)

Financial Code section 952 allows a bank to disregard adverse claims to accounts unless they are made in one of two authorized forms: "Notice to any bank of an adverse claim . . . to a deposit standing on its books to the credit of . . . any person shall be disregarded, and the bank, notwithstanding the notice, shall honor the checks, notes, or other instruments requiring payment of money by or for the account of the person to whose credit the account stands . . . without any liability on the part of the bank . . . ." The

statute provides, however, that the bank shall comply with appropriate judicial orders and may delay payment three days if served with "an affidavit of the adverse claimant." (*Id.*, subd. (a).)

The statute was amended in 1941 to apply expressly to fiduciary accounts. Financial Code section 952, subdivision (c) now provides: "This section shall be applicable even though the name of the person appearing on the bank's books to whose credit the deposit stands or for whose account the property is held is modified by a qualifying or descriptive term such as 'agent', 'trustee', or other word or phrase indicating that the person may not be the owner in his or her own right of the deposit . . . ." In *Desert Bermuda Properties* v. *Union Bank, supra,* 265 Cal.App.2d at pp. 151-152, the court commented, ". . . when the Legislature adopted what is now Financial Code, section 952, it relieved banks from any general duty to police fiduciary accounts (a duty which a bank could not reasonably be expected to carry out effectively). In 1941 the protection of the statute was further broadened by an amendment applying its provisions to accounts carrying a specific qualifying designation, such as agent or trustee."

Though enacted early in this century, Financial Code sections 952 and 953 play an essential role in carrying out contemporary policies favoring the expedited availability of funds. " 'The present banking system under which an enormous number of checks are processed daily could not function effectively if banks were not required to make prompt and effective decisions on whether to pay or dishonor checks.' [Citation.]" (*Los Angeles National Bank* v. *Bank of Canton* (1995) 31 Cal.App.4th 726, 744 [37 Cal.Rptr.2d 389]; see also com., 23D West's Cal. U. Com. Code (1998 cum. pocket supp.) foll. § 11102, p. 35.) The provisions of the California Uniform Commercial Code and federal regulations governing bank deposits and collections require banking transactions to be processed quickly and automatically and impose strict deadlines for the payment or timely dishonor of checks. (E.g., Cal. U. Com. Code, §§ 3103, subd. (a)(7), 4302, 11102 et seq.; 12 C.F.R. §§ 229.30, 229.38 (1997).) Banks are strictly liable for the wrongful dishonor of checks. (Cal. U. Com. Code, § 4402; *Los Angeles National Bank* v. *Bank of Canton, supra,* 31 Cal.App.4th at pp. 742-744.) Under this system favoring expedited handling of funds transfers, a bank cannot be expected to track transactions in fiduciary accounts or to intervene in suspicious activities. (*Software Design & Application, Ltd.* v. *Hoefer & Arnett, Inc., supra,* 49 Cal.App.4th at p. 481.)

In the face of these well-established principles of decisional law and the specific directives of Financial Code sections 952 and 953, appellants place their chief reliance on an expansive interpretation of dicta in *Blackmon* v. *Hale, supra,* 1 Cal.3d 548. The dicta follows language cited earlier in this

opinion: "The bank is not liable for the misappropriation of trust funds by the trustee, however, *unless the bank has knowledge, actual or constructive, of such misappropriation.*" (*Id.* at p. 556, italics added.) Similar language concerning actual or constructive knowledge is found in two earlier decisions. (*Lynch* v. *Wells Fargo Bk. & Union T. Co.* (1931) 114 Cal.App. 565, 572 [300 P. 74]; *Southern T. & C. Bk.* v. *San Diego Sav. Bk.* (1922) 60 Cal.App. 215, 219 [212 P. 385].)

In our opinion, the *Blackmon* dicta should not be interpreted in a manner that would undermine the judicial principles and statutory mandates, discussed above, which relieve banks of any duty to police fiduciary accounts. We regard the dicta as a prudent judicial qualification, recognizing that banks may in some extreme circumstances engage in wrongdoing affecting a fiduciary account that would merit the imposition of liability. (See Bailey, Brady on Bank Checks—The Law of Bank Checks (6th ed. 1987) § 13.13, p. 13-35.) Indeed, *Southern T. & C. Bk.* v. *San Diego Sav. Bk., supra,* 60 Cal.App. 215 involved such a highly unusual situation. The holder of a fiduciary account was himself an officer of the bank and represented the bank in one transaction involving abuse of his fiduciary duties. The court held that the officer's knowledge could be imputed to the bank in this transaction so as to impose liability on the bank. (*Id.* at p. 222.)

Turning to the pleadings subject to demurrer, Chazen's first amended complaint alleges that the bank "had actual or constructive notice of the Cox Parties' conversion of plaintiffs' funds based upon irregular activities in fiduciary and other accounts . . . . Such irregular activities included, but were not necessarily limited to, overdrafts of funds in fiduciary accounts, numerous telephone transfers of large amounts of funds from fiduciary accounts into general and personal accounts of the Cox Parties, coupled with repeated overdrafts in personal and general accounts, . . ." Brown's first amended complaint similarly alleges that "Due to the inordinately high volume and dollar amount of transfers and disbursements from the Trust Accounts, . . . also due to the improper activity in the Trust Accounts [alleged elsewhere in the complaint], and also due to improper commingling in the Trust Accounts of trust assets and nontrust assets . . . , defendants knew and should have known . . . that plaintiffs' funds in the Trust Account were being misappropriated by the Cox Entities." Both complaints proceed to allege that the bank became a party to the conversion of trust funds by Cox by failing to intervene so as to put an end to his misappropriation of funds from the fiduciary accounts.

In their proposed second amended complaints, appellants elaborate on these allegations in ways that are not material to the issue on appeal. For

example, the complaints allege that the bank could also have learned of Cox's misappropriation of trust funds from audit reports of the Department of Real Estate which were available to it.

We find that the inevitable result of these allegations would be to require banks to police fiduciary accounts so as to prevent breaches of fiduciary duty. Under governing principles of banking law, the bank has no such duty. Specifically, it has no duty to prevent commingling of assets in fiduciary accounts, to monitor fiduciary accounts for irregular transactions, to prevent improper disbursements from the accounts, or to conduct an investigation of possible misappropriation of funds. Instead, the bank is obliged under Financial Code section 953 to honor withdrawals from fiduciary accounts by authorized persons who draw on the account in an authorized manner, and it is required by Financial Code section 952 to disregard notice of adverse claims to the account, including notice conveyed by circumstantial evidence or documents in the bank's possession, unless the claims are made through an appropriate affidavit or court order. Though the bank may be free to terminate the account, it incurs no liability by failing to do so.

 The Brown complaint raises a distinct issue governed by separate legal principles—the bank's right of offset against funds in the alleged fiduciary accounts. The first amended complaint alleges that the bank "took a security interest in the Trust Accounts" to secure obligations that Cox owed to the bank and "caused or allowed" disbursements from the Trust Accounts for the purpose of paying these obligations to the bank. The proposed second amended complaint alleges that the bank "executed a setoff agreement" with Cox whereby the bank was "granted the right to set off amounts owed to [it] by the Cox Entities by using plaintiffs' funds in the Trust Accounts, . . ." Subsequently the bank exercised its rights under the security agreement and "seized funds in the Trust Accounts belonging to plaintiffs to satisfy the obligations owed to [bank] by the Cox Entities."

Where a depositor is indebted to the bank and his note is due, the bank is entitled to charge the depositor's account with his matured indebtedness. (*Gonsalves* v. *Bank of America* (1940) 16 Cal.2d 169, 173 [105 P.2d 118]; *Chang* v. *Redding Bank of Commerce* (1994) 29 Cal.App.4th 673, 681 [35 Cal.Rptr.2d 64]; see Fin. Code, § 864.) The bank's right of offset, however, exists only if the depositor is indebted to the bank in the same capacity as he holds the account. Thus, a bank may not "apply the trust funds to a personal indebtedness of the trustees." (*Purdy* v. *Bank of America N.T. & S. Assn.* (1935) 2 Cal.2d 298, 301 [40 P.2d 481]; *Keeney* v. *Bank of Italy, supra,* 33 Cal.App. at p. 518; *Lynch* v. *Wells Fargo Bk. & Union T. Co., supra,* 114 Cal.App. at p. 572.) "The rule is that when the funds are trust funds and the

bank knows or has knowledge of facts sufficient to put it on inquiry that the funds are held by the depositor in trust, the bank may not, as against the beneficiary, apply those funds to the depositor's individual indebtedness to the bank." (*Chang* v. *Redding Bank of Commerce, supra,* 29 Cal.App.4th at p. 682.)

This rule does not imply that the bank may not accept payments from a trust account in satisfaction of the trustee's individual indebtedness to the bank. The propriety of such withdrawals from the trust account is governed by Financial Code section 953. The bank acts improperly only when it charges the account to enforce a right of offset; it is protected under section 953 when it receives funds through the order of the depositor. (*Desert Bermuda Properties* v. *Union Bank, supra,* 265 Cal.App.2d at p. 152.) In *Keeney* v. *Bank of Italy, supra,* 33 Cal.App. at page 516, the account was held under the designation "H. P. Platt, Trustee." The bank "appropriated, by virtue of its banker's lien" (*id.* at p. 517) funds from the account to satisfy a debt owed to it by Platt. The court held from the form of the account and the indorsement on the check deposited into the account that the bank had constructive notice of the equitable rights of the plaintiff. It stated, however: "It is not contended by respondent, nor could it well be in the light of the later decisions, that if the defendant had paid out to third parties the funds here in question upon checks regularly drawn upon the account, it could be held accountable for them, for under such a state of facts no duty is cast upon the bank to inquire into the purpose for which the funds are being used (*United States Fidelity & G. Co.* v. *First Nat. Bank of Monrovia,* 18 Cal. App. 437, [123 Pac. 352]; *Interstate Nat. Bank* v. *Claxton,* 97 Tex. 569, [104 Am. St. Rep. 885, 65 L. R. A. 820, 80 S. W. 604]; *Silisbee State Bank* v. *French Market G. Co.,* 103 Tex. 629, [34 L. R. A. (N. S.) 1207, 132 S. W. 465]; but the cases draw a clear distinction between such payments and an appropriation by the depositary of the fund in payment of its own claim against the trustee or agent." (*Keeney* v. *Bank of Italy, supra,* 33 Cal.App. at pp. 517-518.)

■ In reviewing the sufficiency of the complaint, we treat the demurrer "as admitting all material facts properly pleaded . . . ." (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) "A demurrer does not lie to a portion of a cause of action." (*PH II, Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 1680, 1682 [40 Cal.Rptr.2d 169].) It may be sustained only if the complaint lacks any sufficient allegations to entitle the plaintiff to relief. (*Financial Corp. of America* v. *Wilburn* (1987) 189 Cal.App.3d 764, 778 [234 Cal.Rptr. 653].) "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.)

■ In the case at bar, the first amended complaint alleges that the bank "caused" disbursements from the trust accounts for the purpose of satisfying Cox's personal obligations to the bank and "took a security interest in the Trust Accounts to secure the obligations of the Cox Entities to defendants." Construing this allegation liberally, we think it adequately states a cause of action for conversion against the bank based on charges against the trust accounts for obligations that Cox personally owed to the bank. Since we conclude that the allegation is sufficient, we do not reach the question of whether the trial court abused its discretion in denying leave to file the proposed second amended complaint, which states the theory more clearly.

## B. *Negligence*

■ In analyzing appellants' claim of negligence, we must first distinguish between negligent performance of a bank's duties toward depositors and breach of a duty of care owed to third parties. It is well established that a bank has "a duty to act with reasonable care in its transactions with its depositors . . . ." (*Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 808 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].) The duty is an implied term in the contract between the bank and its depositor. (See *Barclay Kitchen, Inc.* v. *California Bank, supra,* 208 Cal.App.2d at p. 353.)

Brown's first amended complaint alleges certain acts that may have amounted to a breach of the bank's duty of care under the deposit contract. It charges that the bank permitted disbursements from the trust account that "were made upon oral request as opposed to the required written instructions, were made upon the request of unauthorized persons and were made upon the request of persons not signatories on the signature card." Assuming, as we must, that the allegations state a breach of the bank's duty of care under the deposit agreement, it does not follow that the bank breached a duty toward appellants giving rise to a cause of action for negligence. First, while the provisions of the deposit agreement relating to authorized withdrawals served to protect both the bank and the depositor, the provisions were not intended to be for the protection of third parties, unknown to the bank, who were not parties to the deposit agreements. Hence, the bank breached no duty of care toward appellants. Second, the connection between the bank's alleged breach of duty and appellants' loss is tenuous and unexplained. The depositor's defalcations did not depend on the loosely authorized withdrawals from the account by subordinates; Robert Cox and the entities he controlled could have pursued precisely the same course of conduct if the bank had insisted on written orders of withdrawals by authorized persons, such as Cox himself.

In *Software Design & Application, Ltd.* v. *Hoefer & Arnett, Inc., supra,* 49 Cal.App.4th 472, the court affirmed the dismissal of a similar claim. (See

also *Roy Supply, Inc.* v. *Wells Fargo Bank* (1995) 39 Cal.App.4th 1051, 1076 [46 Cal.Rptr.2d 309].) The *Software Design* plaintiffs alleged that the banks failed to follow proper banking practices in allowing a tortfeasor to open an account in the name of a nonexistent partnership. The court held that such banking practices pertaining to the opening of an account do not impose a duty on the bank "to *protect strangers with whom they do no business*," but rather serve to protect the banks themselves. (49 Cal.App.4th at p. 482.) In addition, the court noted that "the relationship between the banks' alleged malfeasance and the harm [appellants] suffered is tenuous." The tortfeasor, who had caused the plaintiffs' losses, had already stolen money which he deposited in the bogus partnership account. (*Id.* at p. 483.)

Apart from this contractual duty of care, appellants cite *Sun 'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 582 P.2d 920] as authority for holding the bank liable for negligence under general tort principles. Under the facts of the case, an employee of the plaintiff, Sun 'n Sand, Inc., prepared checks payable to United California Bank for the signature of an authorized corporate officer, altered the amount of the checks, and then presented them for deposit in her personal account with the bank. Though the bank was itself the named payee, it allowed the proceeds of the checks to be deposited in the employee's personal account. In reviewing a demurrer to the complaint, the opinion holds that the bank could be liable under "the fundamental principle that actors are liable for reasonably foreseeable losses occasioned by their conduct." (*Id.* at p. 695.) The circumstances of the deposits were "sufficiently suspicious" (*id.* at p. 694) as to give rise to a "reasonably foreseeable" risk of loss to the plaintiff if the bank credited the employee's account. (*Id.* at p. 695.) By crediting the account without making reasonable inquiries to verify the employee's authority to make the deposits, the bank "affirmatively engaged in risk-creating conduct" (*id.* at p. 693) resulting in liability for negligence.

Three Court of Appeal decisions have followed the *Sun 'n Sand* decision in cases involving the deposit of checks to the account of a party who is not the named payee. In *Joffe* v. *United California Bank* (1983) 141 Cal.App.3d 541 [190 Cal.Rptr. 443], a real estate investment firm deposited in its own account with the Bank of America a $25,000 check payable to a "Continental Finance Systems-Wells Fargo Escrow Trust Account." In *E. F. Hutton & Co.* v. *City National Bank* (1983) 149 Cal.App.3d 60 [196 Cal.Rptr. 614], one of the plaintiff's employees obtained 18 checks payable to various individual payees, forged the payees' indorsements, and deposited the checks with the forged indorsements in his personal account with the defendant bank. More recently, *Sehremelis* v. *Farmers & Merchants Bank* (1992) 6 Cal.App.4th 767 [7 Cal.Rptr.2d 903], applied the same principles to

somewhat more complicated facts. The plaintiffs engaged a general contractor to develop property with the proceeds from a construction loan. The general contractor caused the construction lender to issue a series of checks to companies ostensibly engaged in the construction work and then negotiated the checks for deposit in its own account at the defendant bank. In each case, the endorsement " 'was either forged, unauthorized or nonexistent.' " (*Id.* at p. 772.)

This brief review of the decisions reveals that *Sun 'n Sand* and its progeny have held banks to be subject to a duty of care toward nondepositors only in narrow factual circumstances: Each case involved the bank's liability for allowing a person to deposit a check, payable to someone else, into a personal account, under circumstances that should have alerted the bank to the possibility of fraud. It is not clear whether the decisions can be applied to other factual circumstances. The decisions appear, at least in part, to reflect policy applying specifically to the negotiation of a check by a person who is not the named payee. In *Sehremelis* v. *Farmers & Merchants Bank, supra,* 6 Cal.App.4th 767, 775, the court commented, "We agree that relevant legal and practical considerations militate in favor of a rather expansive duty of care by collecting banks in dealing with indorsements of checks they negotiate."

Whether or not the principles underlying the *Sun 'n Sand* line of decisions may be applied in other areas of banking activity, appellants here have failed to state facts giving rise to a duty of care to nondepositors. For the most part, the pleadings allege actions governed by Financial Code section 952 or 953, or common law principles relieving banks of fiduciary duties to depositors. Such actions clearly are subject to " 'overriding policy considerations' " that preclude the existence of a duty under general tort principles. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) Other portions of the pleadings allege that the bank cultivated a special relationship with Cox as a large customer, but they fail to allege specific actions presenting a foreseeable risk of harm to third parties. We see no reasonable possibility that the defects in the complaint could be cured by amendment. (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 943, p. 400.)

The judgment against appellant Brown is reversed to the extent that it dismissed the fifth cause of action for conversion of the first amended complaint and is otherwise affirmed. The judgment against appellant Chazen is affirmed.

Costs to appellant Brown. Costs to Centennial Bank on Chazen's appeal.

Strankman, P. J., and Dossee, J., concurred.