1. Former Defendant Quicken Loans, Inc. ("Quicken") filed a dismissal motion. However, Plaintiffs voluntarily dismissed their

## IV. Order

Defendants' motion for judgment as a matter of law under Fed. R. Civ. Proc. 50(b) is DENIED.

IT IS SO ORDERED.

**PASKENTA BAND OF NOMLAKI INDIANS; and Paskenta Enterprises Corporation, Plaintiffs,**

**v.**

**Ines CROSBY; John Crosby; Leslie Lohse; Larry Lohse; Ted Pata; Juan Pata; Chris Pata; Sherry Myers; Frank James; Umpqua Bank; Umpqua Holdings Corporation; Cornerstone Community Bank; Cornerstone Community Bancorp; Jeffery Finck; Garth Moore; Garth Moore Insurance and Financial Services, Inc.; Associated Pension Consultants, Inc.; Haness & Associates, LLC; Robert M. Haness; the Patriot Gold & Silver Exchange, Inc. and Norman R. Ryan, Defendants,**

**CRP 111 West 141ST LLC; Castellan Managing Member LLC; CRP West 168th Street LLC; and CRP Sherman Avenue LLC, Nominal, Defendants[1].**

**No. 2:15–cv–00538–GEB–CMK.**

United States District Court, E.D. California.

Signed Aug. 13, 2015.

Filed Aug. 14, 2015.

claims against Quicken, which renders the motion moot and it is therefore denied.

Andrew Michael Purdy, Joseph Saveri Law Firm, Daniel Canfield Goldberg, Stuart G. Gross, Gross Law, P.C., San Francisco, CA, for Plaintiffs.

John M. Murray, Liberty Law, APC, Red Bluff, CA, Kasey James Curtis, Scott H. Jacobs, Reed Smith LLP, Los Angeles, CA, Natalie P. Vance, Kristin N. Blake, Klinedinst PC, Robert William Lucas, Murphy Pearson Bradley & Feeney, Avalon Claire Johnson, Downey Brand, LLP, Michael J. Kuzmich, Michael Thomas Fogarty, Boutin Jones, Inc., Sacramento, CA, John H. McCardle, Kraft Opich, LLP, Citrus Heights, CA, John N. MacLeod, Kyle M. Fisher, Friedemann Goldberg LLP, Santa Rosa, CA, Mani Sheik, Sheik Law, San Francisco, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT

GARLAND E. BURRELL, JR., Senior District Judge.

The following Defendants seek dismissal of claims in Plaintiffs' First Amended Complaint ("FAC"): Ines Crosby, John Crosby, Leslie Lohse, Larry Lohse (collectively, the "Employee Defendants"), Juan Pata, Chris Pata, Sherry Myers, Frank James, The Patriot Gold & Silver Exchange, Norman R. Ryan (collectively, with the Employee Defendants, "Pata Defendants"), Umpqua Bank, Umpqua Holdings Corporation (collectively, "Umpqua Defendants"), Cornerstone Community Bank, Cornerstone Community Bancorp, Jeffery Finck (collectively, "Cornerstone Defendants"), Garth Moore, Garth Moore Insurance and Financial Services, Inc. (collectively, "Moore Defendants"), Associated Pension Consultants, Inc. ("APC"), Robert M. Haness, and Haness & Associates, LLC (collectively, "Haness Defendants").

The Pata Defendants and Moore Defendants seek dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction. Umpqua Defendants, Cornerstone Defendants, Moore Defendants, APC, and Haness Defendants seek dismissal under Rule 12(b)(6) for failure to state a claim.

### I. FACTUAL ALLEGATIONS

The following factual allegations in the FAC relate to the motions. Plaintiff Paskenta Band of Nomlaki Indians ("the Tribe") employed the Employee Defendants in executive roles for more than a decade. Plaintiffs allege the Employee Defendants used their positions to embezzle millions of dollars from the Tribe and its principal business entity, the Paskenta Enterprises Corporation ("PEC"). Plaintiffs allege the Employee Defendants stole this money from Plaintiffs' bank accounts at Umpqua Bank and Cornerstone Bank by withdrawing large sums for their personal use, and that the Employee Defendants caused the Tribe to invest in two unauthorized retirement plans for their personal benefit: a defined benefit plan ("Tribal Pension Plan") and a 401(k) ("Tribal 401(k)") (collectively "Tribal Retirement Plans"). Plaintiffs allege the Employee Defendants kept their activities hidden from Plaintiffs through *inter alia,* harassment, intimidation, and cyber-attacks on the Tribe's computers.

Plaintiffs further allege the remaining Defendants knowingly assisted the Employee Defendants in aspects of their scheme. Plaintiffs allege the Umpqua Defendants and the Cornerstone Defendants controlled banks where Plaintiffs maintained accounts and, despite knowing the Employee Defendants were withdrawing

money from these accounts for their personal benefit, permitted the Employee Defendants to make withdrawals and failed to notify Plaintiffs of the Employee Defendants' actions. Plaintiffs also allege the Moore Defendants, as Plaintiffs' financial advisors, and APC, as the third-party administrator for the Tribal Retirement Plans, assisted the Employee Defendants in setting up and administering the unauthorized Tribal Retirement Plans, and that the Haness Defendants as actuaries for the Tribal Pension Plan, assisted the Employee Defendants in setting up and administering that Plan.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Pata Defendants and Moore Defendants each argue this lawsuit should be dismissed since the allegations in Plaintiffs' FAC demonstrate the federal court lacks subject matter jurisdiction over the lawsuit because Plaintiffs' claims "are inextricably intertwined with internal [issues of] Paskenta Tribal governance and the interpretation and application of Paskenta Tribal law." (Tribal Defs. Not. Mot. & Mot. Dismiss ("Pata Mot.") 3:9–10, ECF No. 52; see also Defs. Garth Moore and Garth Moore Ins. & Fin. Servs., Inc.'s Not. Mot. & Mot. Dismiss ("Moore Mot.") 4:24–26, ECF No. 52.)

Plaintiffs respond:

This Court has ... subject matter jurisdiction ... based on several statutory provisions: First, ... the Court has federal question jurisdiction under 28 U.S.C. § 1331, as [Plaintiffs] ha[ve] stated claims under RICO, 18 U.S.C. §§ 1961 et seq. and under the [Computer Fraud and Abuse Act], 18 U.S.C. § 1030.... Second [the court has subject matter jurisdiction since] the Tribe's governing body is federally recognized, [and] ... 28 U.S.C. § 1362 [states]:

"The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe ... with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." ...

Third, based on the ... RICO claim, specifically, the Court has subject matter jurisdiction [under] ... 18 U.S.C. § 1964(a),(c). And fourth, the Court has ancillary jurisdiction over the ... pendent California state law claims under 28 U.S.C. § 1367.

(Pls.' Opp'n Mot. Dismiss ("Opp'n") 13:3–17, ECF No. 73.)

The Pata Defendants and the Moore Defendants make what is considered a facial challenge to the federal court's subject matter jurisdiction. "In a facial [challenge], the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). When deciding a facial challenge, Plaintiffs are afforded the same procedural protections as when faced with a motion to dismiss for failure to state a claim under Rule 12(b)(6); namely, the court "assume[s] [plaintiffs'] allegations to be true and draw[s] all reasonable inferences in [their] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.2004).

Pata Defendants and Moore Defendants have not shown that whatever they have referenced as "internal [issues of] Paskenta Tribal governance and the interpretation and application of Paskenta Tribal Law," deprives the federal court of subject matter jurisdiction over Plaintiffs' claims. (Pata Mot. 3:9–10.)

Therefore each motion challenging the federal court's subject matter jurisdiction is denied.

## B. Failure to State a Claim

### 1. Legal Standard

■ "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir.2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the ... court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. "For purposes of a motion to dismiss, we accept all well-pleaded allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir.2012).

### 2. Actual Knowledge

■ Umpqua Defendants, APC, and Haness Defendants each seek dismissal of Plaintiffs' claims in which Plaintiffs allege they aided and abetted the Employee Defendants' conversion of Tribal assets and the Employee Defendants' breach of their fiduciary duty owed to Plaintiffs, contending the FAC fails to plausibly allege the referenced Defendants had actual knowledge of the Employee Defendants' wrong-

doing.[2] Umpqua Defendants and Haness Defendants seek dismissal with prejudice.

"Liability may ... be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person."

*Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App.4th 1138, 1144, 26 Cal.Rptr.3d 401 (2005) (alterations in original) (citing *Saunders v. Superior Court*, 27 Cal. App.4th 832, 846, 33 Cal.Rptr.2d 438 (1994)). "[A]iding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge," which "requires more than a vague suspicion of wrongdoing." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993, n. 4 (9th Cir.2006). "[T]o satisfy the knowledge prong [Plaintiffs must plausibly allege], the defendant ... [had] 'actual knowledge of [an Employee Defendant's conversion or breach of fiduciary duty owed to Plaintiffs.]'" *Id.* at 993 (citation omitted).

#### a. Umpqua Defendants

■ Plaintiffs allege in the FAC the Umpqua Defendants had actual knowledge of the Employee Defendants' conversion of Tribal assets and of their breach of the fiduciary duty the Employee Defendants owed to Plaintiffs, since "[Employee Defendant Ines] Crosby would frequently go

---

**2.** Moore Defendants also seek dismissal of what they refer to as Plaintiffs' claim against them for aiding and abetting the Employee Defendants' RICO violations, arguing the claim is not legally cognizable. However, Plaintiffs' only aiding and abetting claims against the Moore Defendants allege they aid-

ed and abetted the Employee Defendants in converting Tribal assets and aided and abetted the Employee Defendants in breaching the fiduciary duty the Employee Defendants owed Plaintiffs under state law. Therefore, the motion is denied because it has not been shown to concern an actual controversy.

to Umpqua's Orland, California branch and present checks from the Tribe's checking account made payable to 'Cash' ... for large sums" and the tellers would give her the money. (FAC ¶ 283.) Plaintiffs allege the Orland branch "is small with approximately four tellers" working at a time and "as members of the Orland community [the Umpqua tellers] were aware of the extraordinarily extravagant and luxurious life style enjoyed by ... Ines Crosby." (FAC ¶ 590.) Plaintiffs allege Ines Crosby's withdrawals from Umpqua Bank "were remarkably large relative to other withdrawal[s] from the branch;" and were often large enough to "require[ ] Umpqua ... to file a Currency Transaction Report ("CTR") with the Internal Revenue Service." (FAC ¶¶ 591–92.) Plaintiffs also allege the Umpqua Defendants permitted Ines Crosby to pay her credit card bills through the Tribe's account despite receiving "specific training" that this could be "a means to disguise ... illegal transactions" and that the Umpqua tellers continued to serve Ines Crosby "after it was widely reported in the local press that [she] ... had been ... suspected of misappropriating millions of dollars." (FAC ¶¶ 599, 594.)

Plaintiffs' allegations are insufficient to plead plausible claims that the Umpqua Defendants had actual knowledge of the Employee Defendants' alleged conversion of Tribal assets or of the Employee Defendants' alleged breach of their fiduciary duty owed to Plaintiffs. Therefore, these claims are dismissed. However, Umpqua Defendants have not shown amendment would be futile.

### b. APC

■ Plaintiffs allege the manner in which the Employee Defendants instructed APC to administer the Tribal Retirement Plans indicated to APC that the Employee Defendants intended to use these plans as a short-term vehicle to steal from the Tribe, and that the Employee Defendants' instructions, coupled with APC's retirement plan administration experience, are sufficient to support drawing a reasonable inference that APC had actual knowledge of the Employee Defendants' alleged thievery intentions.

Specifically, Plaintiffs allege APC "set up and administered" the Tribal Retirement Plans "as though the Tribe was ... [a] wholly owned small business" with few eligible participants rather than a Tribal nation; assisted the Employee Defendants in making choices that were not compliant with ERISA; developed Tribal Retirement Plans designed for short-term funding that could be cashed-out in five years; and allowed Defendant John Crosby to sign documents authorizing early-withdrawals from his 401(k), even after his employment with the Tribe had been terminated. (FAC ¶¶ 220–225.)

These allegations are insufficient to plead a plausible claim that APC had actual knowledge of the Employee Defendants' alleged theft of Plaintiffs' money, since they do not plausibly allege that APC knew the irregularity in the Tribal Retirement Plans was the result of the Employee Defendants' intent to convert Plaintiffs' funds. Therefore, the claim is dismissed.

### c. Haness Defendants

■ Plaintiffs allege that because the Haness Defendants are "retirement professionals," the manner in which the Employee Defendants structured the Tribal Pension Plan indicated to the Haness Defendants that the Employee Defendants' intended "to use the Tribal Pension Plan as a short-term investment to divert Tribal funds." (FAC ¶ 223.) Plaintiffs allege in the FAC that the Tribal Pension plan was set up "with an actuarial formula in which the target retirement benefit was ... approximately 4 times higher than the industry standard," (FAC ¶ 223(a)), and the "re-

tirement benefit qualification criteria [qualifying an employee with five years of service who had attained the age of 65] ... caused the Tribe to make ..., extraordinarily high contributions for Ines Crosby." (FAC ¶ 223(b).) Plaintiffs also allege the Haness Defendants were aware that terminating a pension plan just a few years after its inception, as the Employee Defendants ultimately did, is evidence that the plan from the outset was not a bona fide retirement program. (FAC ¶ 223(c).)

However, the FAC does not contain allegations that support drawing a reasonable inference that the Haness Defendants had actual knowledge the alleged reason for the Tribal Pension Plan's irregular structure was an intent to convert Tribal assets. Therefore this claim is dismissed. However, Haness Defendants have not shown amendment would be futile.

### 3. Duty

■ Umpqua Defendants, Cornerstone Defendants, and Haness Defendants each seek dismissal of Plaintiffs' common law negligence claim arguing the FAC fails to plausibly allege they owed Plaintiffs' a duty of care, which is an element of a negligence claim. Umpqua Defendants also seek dismissal of Plaintiffs' breach of contract claim for the same reason. Umpqua Defendants and Haness Defendants seek dismissal with prejudice.

#### a. The Banking Defendants

■ Banks "ha[ve] a duty to act with reasonable care in [their] transactions with depositors;" this duty "is an implied term in the contract between the bank and its depositor." *Chazen v. Centennial Bank,* 61 Cal.App.4th 532, 543, 71 Cal.Rptr.2d 462 (1998). However, "[t]his contractual relationship does not involve any implied duty to supervise account activity, or to inquire into the purpose for which the funds are being used." *Id.* at 537, 71 Cal.Rptr.2d 462. California law "re-quire[s] banking transactions to be processed quickly and automatically," and "[u]nder this system favoring expedited handling of funds transfers, a bank cannot be expected to track transactions in fiduciary accounts or to intervene in suspicious activities." *Id.* at 539, 71 Cal.Rptr.2d 462. A "bank is not liable for the misappropriation [of a customer's] funds by [its authorized signatories], ... *unless the bank has knowledge, actual or constructive, of such misappropriation.*" *Blackmon v. Hale,* 1 Cal.3d 548, 556, 83 Cal.Rptr. 194, 463 P.2d 418 (1970) (emphasis added).

#### i. Umpqua Defendants

Plaintiffs allege Umpqua's tellers "receive training concerning .... federal and internal reporting requirements" regarding the large cash transactions that the Employee Defendants made at Umpqua Bank, and that these reporting requirements put the Umpqua Defendants on inquiry notice of the Employee Defendants' unlawful conduct and created a duty on the part of the Umpqua Defendants to "inquir[e into] or investigat[e]" these transactions. (FAC ¶¶ 591–93.)

Plaintiffs allege the Employee Defendants were authorized by the Tribe to access Plaintiffs accounts, but do not plausibly allege the Umpqua Defendants had actual or constructive knowledge of the Employee Defendants' alleged misappropriation since it has not been plausibly pled that transactions triggering "federal and internal reporting requirements" indicate misappropriation. Therefore, Plaintiffs negligence and breach of contract claims are dismissed. However, Umpqua Defendants have not shown amendment would be futile.

#### ii. Cornerstone Defendants

■ Plaintiffs argue they plausibly allege a negligence claim against the Cornerstone Defendants since they allege Jef-

frey Finck, Cornerstone's CEO, "alerted a Tribal employee that the Tribe should look at the suspicious activity that the [Employee Defendants] had conducted with the Tribe's money deposited in Cornerstone Bank." (Opp'n 52:27–53:7; FAC ¶ 644.)

However, the allegation that Finck alerted a Tribal employee to "suspicious activity" does not plausibly allege he or any of other Cornerstone Defendants had actual or constructive knowledge of the Employee Defendants' conversion and breach of the fiduciary duty they owed to Plaintiffs. Therefore, the Cornerstone Defendants' motion is granted.

#### b. Haness Defendants

■ Plaintiffs argue the Haness Defendants owed them a duty of care since Plaintiffs were third party beneficiaries of the Tribal Pension Plan, they sponsored the plan, and the Haness Defendants set up of the Tribal Pension Plan. (Opp'n 71:14–16.)

The Haness Defendants reply that "[t]o qualify as [being owed a duty of care] as a third party beneficiary of a contract, the third party must show that the contract was made expressly for his [or her] benefit" and the FAC does not allege the Tribal Pension Plan was made for Plaintiffs' benefit. (Reply of Defs. Robert M. Haness & Haness & Assoc., LLC ISO Mot. Dismiss FAC ("Haness Reply") 5:21–22; 6:3–6, ECF No. 84.)

> California law generally states that the duty of ordinary care owed by a supplier of information [like an actuary] ... does not run to non-clients. However, California law recognizes an exception to the general rule, that such a supplier of information does owe a duty to intended third party beneficiaries.

*Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080–81 (9th Cir.2009).

Plaintiffs do not plausibly allege they are third-party beneficiaries of the Tribal Retirement Plan. Therefore, this claim is dismissed. However, the Haness Defendants have not shown amendment would be futile.

#### 4. Restitution

■ Umpqua Defendants, APC, and Haness Defendants seek dismissal of Plaintiffs' restitution claims arguing no such claim exists under California law. Plaintiffs do not oppose Umpqua Defendants' motion, but oppose the motion concerning their claims against APC and Haness, arguing California law permits a restitution claim.

■ Restitution "is synonymous with" unjust enrichment. *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1370, 108 Cal.Rptr.3d 682 (2010). "California courts are split on the question whether unjust enrichment [and restitution] [are] viable cause[s] of action under California law." *In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. C–10–5625–SI, 2011 WL 4345435, at *3 (N.D.Cal. Sept. 15, 2011) (citing cases). However, the Ninth Circuit has stated:

> [I]n California, there is not a standalone cause of action for "unjust enrichment," which is synonymous with "restitution." However, unjust enrichment and restitution are not irrelevant in California law. Rather, they describe the theory underlying a claim that a defendant has been unjustly conferred a benefit "through mistake, fraud, coercion, or request." The return of that benefit is the remedy "typically sought in a quasi-contract cause of action." When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution."

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir.2015) (citations omitted). "While the California courts have not conclusively decided this question, ... the court is bound by the Ninth Circuit's interpretations of state law." *Brown v.*

*Gen. Steel Domestic Sales, LLC,* No. CV08–00779–MMM–(SHX), 2008 WL 2128057, at *5 (C.D.Cal. May 19, 2008). Therefore, Plaintiffs restitution claim could be construed as a quasi-contract claim, and since the movants have not shown the FAC fails to allege such a quasi-contract claim, each dismissal motion is denied.

### 5. Fiduciary Duty

Cornerstone Defendants, APC and Haness Defendants each seek dismissal of Plaintiffs' breach of fiduciary duty claim arguing they owed Plaintiff no such duty. APC and the Haness Defendants seek dismissal with prejudice.

> A fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises only where a confidence is reposed by one person in the integrity of another.

*Wolf v. Superior Court,* 107 Cal.App.4th 25, 29, 130 Cal.Rptr.2d 860 (2003) (quotation marks omitted). "The essence of a fiduciary ... relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed ... is in a position to exert unique influence over the dependent party." *Richelle L. v. Roman Catholic Archbishop,* 106 Cal.App.4th 257, 271, 130 Cal.Rptr.2d 601 (2003). "[B]efore a person can be charged with a fiduciary obligation [to another], he [or she] must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Comm. On Children's Television, Inc. v. General Foods Corp.,* 35 Cal.3d 197, 221, 197 Cal.Rptr. 783, 673 P.2d 660 (1983).

#### a. Cornerstone Defendants

Plaintiffs argue Cornerstone Defendants owed them a fiduciary duty since "[t]he Tribe is a shareholder of Cornerstone Bank and is accordingly owed" a fiduciary duty even if such a duty is not present in an exclusively "strictly ... bank-depositor relationship." (Opp'n 52:17–19.)

Cornerstone Defendants reply that Plaintiffs "conflate[ ] the duties owed to the Tribe as a shareholder with those owed to the Plaintiffs as depositors," since Plaintiffs' breach of fiduciary duty claim stems from Plaintiffs' bank accounts with Cornerstone Bank. (Cornerstone Defendants' Reply ISO Mot. Dismiss ("Cornerstone Reply") 12:2–3; 12:20–13:1, ECF No. 85.) The Cornerstone Defendants further argue: "Nowhere does the FAC allege that PEC was a shareholder" and therefore "the Cornerstone Defendants clearly owed no fiduciary duty to PEC under any theory." (Cornerstone Reply 12 n. 3.)

Plaintiffs allege in the FAC that the Tribe and PEC were account holders at Cornerstone Bank. "[U]nder ordinary circumstances the relationship between a bank and its depositor is that of a debtor-creditor, and is not a fiduciary one," and therefore this relationship does not establish the Cornerstone Defendants owed Plaintiffs a fiduciary duty. *Lawrence v. Bank of Am.,* 163 Cal.App.3d 431, 437, 209 Cal.Rptr. 541 (1985). However, the Tribe also alleges it was a minority shareholder in Cornerstone Bank and in this capacity, the Cornerstone Defendants owed it a fiduciary duty of loyalty, which the Cornerstone Defendants breached by remaining silent while Employee Defendant John Crosby used the Tribe's accounts at Cornerstone bank for his personal benefit. Plaintiffs have not plausibly alleged that any fiduciary duty of loyalty that the Cornerstone Defendants owed the Tribe as a minority shareholder extended to matters involving the Tribe's bank account at Cornerstone bank. Therefore, the claim is dismissed.

### b. Tribal Retirement Plan Defendants

#### i. APC

APC argues it owed Plaintiffs no fiduciary duty since the FAC "simply state[s] that APC administered the Tribe's pension plans" and this assertion which "does not create a fiduciary relationship" between APC and Plaintiffs. (Not. & Mot. Def. Associated Pension Consultants, Inc. Dismiss FAC ("APC Mot.") 6:17–18, ECF No. 53.)

Plaintiffs respond they sufficiently allege a fiduciary relationship since "[b]y setting up and administering the Tribe's pension plans and 401(k), APC performed discretionary acts on behalf of the Tribe," and the Tribe "'relied on APC to ensure [the retirement plans] were ERISA compliant.'" (Opp'n 58:17–21.)

Plaintiffs allege in the FAC that the Employee Defendants "received advice and direction from ... APC in setting up and administering the Tribal Retirement Plans," and APC "substantially assisted [the Employee Defendants] in making investment choices with the funds invested in the plans." (FAC ¶¶ 218, 225.) Plaintiffs also allege APC "was responsible for ensuring that the plans remained ERISA compliant" and "repeatedly assisted the [Employee Defendants] in establishing, modifying and funding the Tribal Retirement Plans," and that Employee Defendants and Sherry Myers were the only beneficiaries of the Tribal Retirement Plans. (FAC ¶¶ 222, 225.)

These allegations are insufficient to plausibly allege APC owed a fiduciary duty to Plaintiffs. Therefore, the claims are dismissed.

#### ii. Haness Defendants

The Haness Defendants argue as actuaries for the Tribal Pension Plan, they had no fiduciary relationship with Plaintiffs, since Plaintiffs are not beneficiaries of the Plan.

Plaintiffs respond the Haness Defendants owed them a fiduciary duty because Plaintiffs allege the Haness Defendants knew the Tribe sponsored the Tribal Pension Plan and since Plaintiffs were the plan's sponsor, they were "the intended beneficiar[ies]" of the plan, and were owed a fiduciary duty. (Opp'n 68:6–9; 68:11–12.)

Plaintiffs allege the Employee Defendants and Sherry Myers were the only beneficiaries of the Tribal Pension Plan. Plaintiffs' allegations do not plausibly allege a fiduciary relationship between Haness Defendants and Plaintiffs. Therefore, Plaintiffs' claims are dismissed. However, Haness Defendants have not demonstrated amendment would be futile.

### 6. Statutory Negligence

Umpqua Defendants and Cornerstone Defendants each seek dismissal of Plaintiffs' statutory negligence claim. Umpqua seeks dismissal with prejudice. Plaintiffs do not oppose the motions, but argue Umpqua Defendants have not shown leave to amend would be futile. Therefore, the claims are dismissed with leave to amend.

### 7. Individual Claims

#### a. Cornerstone

Cornerstone Defendants seek dismissal of each claim alleged against them arguing "the Tribe released said defendants from all such claims [in an agreement] executed in May of 2014." (Not. Mot. & Mot. of Cornerstone Defs.' ("Cornerstone Mot.") 1:20, ECF No. 50.) Cornerstone Defendants attach the agreement, titled "Amended and Restated Defense and Indemnity Agreement," on which an execution date of May 19, 2014 is set forth, as Exhibit A to their motion ("May 19 Agreement"). Cornerstone Defendants argue the May 19 Agreement

should be incorporated by reference into the FAC since Plaintiffs "repeatedly refer to [it] in the FAC." (Cornerstone Mot. 5:4–6.)

Plaintiffs disagree that the FAC references the May 19 Agreement, arguing the agreement referenced in the FAC is a prior agreement the parties entered on April 22, and state that the later referenced agreement is attached as Exhibit 1 to the Declaration of Ambrosia Rico, and is titled "Defense and Indemnity Agreement" ("the April 22 Agreement").

Plaintiffs allege in the FAC that after the Employee Defendants employment with the Tribe was terminated, the Cornerstone Defendants "refus[ed] to provide the Tribe access to the Tribe's money on deposit at Cornerstone Bank, unless and until the Tribe released Cornerstone Bank ... [from] claims arising out of [its] wrongful conduct," and therefore the release agreement is "null and void" since it was "procured ... [through] intentional and/or negligent misrepresentations and/or fraudulent omissions," and economic duress. (FAC ¶¶ 645–647.)

Neither party disputes the authenticity of the April 22 Agreement or the May 19 Agreement and although the FAC references a release agreement, it is unclear what agreement is referenced. Since the Cornerstone Defendants have not shown that the May 19 Agreement is incorporated by reference into the FAC, its motion is denied.

### b. APC

APC seeks dismissal of the claims alleged against it arguing the claims are barred by the statute of limitations, Plaintiffs fail to plausibly allege APC caused Plaintiffs' injuries, and the FAC lacks any allegations concerning APC's conduct toward PEC. APC also seeks dismissal of, or in the alternative, moves to strike, Plaintiffs' punitive damages claim.

### i. Statute of Limitations

■ APC argues each of Plaintiffs' claims is governed by a four-year statute of limitations period and Plaintiffs "complaint was filed more than four years after Plaintiffs were allegedly wronged and suffered injury." (APC Mot. 13:8–10.) The initial complaint was filed March 10, 2015.

Plaintiffs respond that "[t]he FAC demonstrates that they did not discover—nor could they have discovered through reasonable investigation—the existence of their injury or Defendants' wrongful conduct until April 2014, when the [Employee Defendants] were removed from control of the Tribe." (Opp'n 55:23–25.)

■ "In ordinary tort and contract actions, the statute of limitations ... begins to run upon the occurrence of the last element essential to the cause of action. The plaintiff's ignorance of the cause of action, or the identity of the wrongdoer, does not toll the statute." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 187, 98 Cal.Rptr. 837, 491 P.2d 421 (1971).

To align the actual application of the limitations defense more closely with the policy goals animating it, the [California] courts and the [California] Legislature have over time developed a handful of equitable exceptions to and modifications of the usual rules governing limitations periods. .... The "most important" of these doctrines, the discovery rule, where applicable, "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."

*Aryeh v. Canon Bus. Solutions, Inc.,* 55 Cal.4th 1185, 1192, 151 Cal.Rptr.3d 827, 292 P.3d 871 (2013) (quoting *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999)). "A plaintiff has reason to discover a cause of action when

he or she 'has reason at least to suspect a factual basis for its elements.'" *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal.4th 797, 807, 27 Cal.Rptr.3d 661, 110 P.3d 914 (2005) (quoting *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999)).

Plaintiffs allege they could not have discovered the Employee Defendants alleged wrongdoing until April 2014 since the Employee Defendants "took extraordinary action to hide their scheme from discovery" by "refusing to provide any information to other Tribal members, including members of the Tribal Council, concerning the Tribe's financial activities," by "purposefully prevent[ing] any type of standard auditing or reporting," by "manipulat[ing] the electoral process by which the Tribal Council was chosen," by "purchas[ing] the silence of persons who were in a position to disclose their wrongful conduct," and by "ma[king] repeated false claims that they were entitled to take all of the benefit they stole from the Tribe." (FAC ¶¶ 422–426.) APC has not shown that these allegations are insufficient to have postponed the date on which Plaintiffs' causes of action accrued under the applicable statute of limitations. Therefore its motion is denied.

### ii. Injury

APC argues each claim against it should be dismissed since "[t]he FAC establishes that no act or omission by APC could be the cause" of Plaintiffs' injuries since the Employee Defendants "engaged in numerous [criminal] acts which create a superseding cause." (APC Mot. 4:15–16; 5:15–16.)

Plaintiffs respond that a superseding cause only prevents liability where it "breach[es] the chain of causation" making the injury unforeseeable, and Plaintiffs' economic injury was the foreseeable result of APC work setting up and administering the Tribal Retirement Plans. (Opp'n 63:4–5; 63:79.)

The general test of whether an independent intervening act, which operates to produce an injury, breaks the chain of causation is the foreseeability of the act. An act is not forseeable and thus is a superseding cause of the injury if the independent intervening act is highly unusual or extraordinary, not reasonably likely to happen.

*Schrimsher v. Bryson*, 58 Cal.App.3d 660, 664, 130 Cal.Rptr. 125 (1976).

Criminal conduct which causes injury will ordinarily be deemed the proximate cause of an injury, superseding any prior negligence which might otherwise be deemed a contributing cause. However "if the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liability for the harm caused thereby."

*Koepke v. Loo*, 18 Cal.App.4th 1444, 1449, 23 Cal.Rptr.2d 34 (1993) (quoting *Vesely v. Sager*, 5 Cal.3d 153, 164, 95 Cal.Rptr. 623, 486 P.2d 151 (1971) abrogated on other grounds by Cal. Civ.Code § 1714).

Plaintiffs allege the Employee Defendants "received advice and direction from" APC and "routinely consulted" with APC regarding the Tribal Retirement Plans. (FAC ¶ 218.) Plaintiffs allege "[s]everal factors are indicative of the fraudulent nature of the Tribal Retirement Plans" and by "setting up and administering the Tribal Retirement Plans in ways that would never have been done for a financially accountable or healthy business," APC caused harm to the Tribe. (FAC ¶¶ 219–220.) Plaintiffs allege ERISA and Treasury Department regulations prescribe retirement plans "must be created and administered with the intention of creating a permanent mechanism for retirement sav-

ings that benefits an employer's current and future employees generally," yet the Tribal Retirement Plans were set up to only benefit the Employee Defendants and Sherry Myers, and "excluded participation of any [other] employees of the Tribe." (FAC ¶¶ 220–221.) Plaintiffs further allege APC was aware that "[t]he establishment and ... modification" of the Tribal Retirement Plan "required authorization from the Tribal Council," yet APC set up and administered the Tribal Retirement Plans without receiving authorization. (FAC ¶ 222.) Plaintiffs further allege the IRS requires a retirement plan to be set up "with the intent to be a permanent, not temporary program," yet APC:

structured and administered the Tribal Pension Plan as a short-term ... mechanism to divert a huge amount of Tribal money ... quickly [by using] ... an actuarial formula in which the target retirement benefit was ... four times higher than the industry standard, [and allowing an employee to cash out after five years and as a result,] .... the Tribal Pension Plan was shut down after only give years of existence because it was too generous.

(FAC ¶ 223.) Plaintiffs allege APC allowed Employee Defendant John Crosby to sign documents authorizing early-withdrawals from his 401(k), even after his employment with the Tribe had terminated. (FAC ¶ 224.)

Considering Plaintiffs' allegations in the FAC, APC has not shown the Employee Defendants' alleged criminal conduct was a superseding cause of Plaintiffs' harm. Therefore, APC's motion is denied.

### iii. PEC

APC argues each claim PEC alleges against it fails "because the FAC is devoid of any allegations against APC involving PEC." (APC Mot. 3:27–28.)

▮ PEC does not respond to this argument. APC also filed a reply brief in

which it states PEC's silence evinces that this portion of APC's dismissal motion should be granted without leave to amend.

None of the allegations in the FAC state a claim against APC on behalf of PEC. Therefore, PEC's claims against APC are dismissed. Further, since PEC has not responded to APC's dismissal argument, this failure to respond is construed as an admission that granting leave to amend would be futile. Therefore, this portion of APC's motion is granted without leave to amend.

### iv. Punitive Damages

▮ APC argues the Tribe's punitive damages prayer against it should be dismissed or in the alternative stricken since "Plaintiffs' defective charging allegations are ... unsupported by facts that establish the requisite elements of malice, oppression or fraud." (APC Mot. 17:25–26.)

The Tribe responds it sufficiently pled that APC committed fraud in the FAC, since it alleges that "[r]ather than making the ... disclosures [to the Tribe that APC was required to make as a result of its fiduciary relationship with the Tribe], APC fraudulently concealed several facts material to Plaintiffs' rights and interests." (Opp'n 64:4–7.)

The Tribe's punitive damages prayer against APC is predicated on fraud stemming from APC's breach of its fiduciary duty to the Tribe; however, based on a ruling supra, the FAC fails to plausibly allege APC owed the Tribe a fiduciary duty. Therefore, APC's dismissal motion is granted.

### III. Conclusion

For the stated reasons, the dismissal motions are GRANTED in part and DENIED in part. Plaintiff is granted (21) days leave from the date on which this order is filed to file a Second Amended Complaint addressing the deficiencies in

any dismissed claim that was not dismissed without leave to amend.